UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE BERNAL RAMIREZ,<br>Defendant. | Case No. 17-CR-00130-LHK-1<br>**ORDER DENYING MOTION TO DISMISS INDICTMENT**<br>Re: Dkt. No. 22 |

Defendant Jose Bernal Ramirez ("Defendant") filed a Motion to Dismiss Indictment Due to Unlawful Deportation on November 1, 2017. ECF No. 22 ("Mot."). In the motion, Defendant seeks to dismiss his indictment for illegal reentry on the ground that the deportation on which the indictment for illegal reentry was based was invalid. On November 29, 2017, the Government filed an Opposition to Defendant's motion. ECF No. 23 ("Opp."). On December 13, 2017, Defendant filed a Reply to the Government's Opposition. ECF No. 25 ("Reply"). Having considered the submissions of the parties, the relevant law, and the record in this case, Defendant's motion to dismiss the indictment is DENIED.

**I. BACKGROUND**

Defendant was brought to the United States with his parents and three older siblings in

June 2001, when Defendant was eight years old. *See* ECF No. 22-1, Ex. A, Form I-485. Defendant was admitted to the United States on a "V-2" visa, as his parents, Silvia Ramirez de Bernal and Angel Bernal, were lawful permanent residents ("LPRs"). *Id.*; *see* ECF No. 22-1, Ex. B. Defendant became an LPR in 2005. ECF No. 22-1, Ex. A, LPR Approval.

In 2008, when Defendant was fifteen years old, his father, Mr. Bernal, became very ill and was diagnosed with glioblastoma, a severe form of brain cancer. ECF No. 22-1, Ex. E. Following Mr. Bernal's brain surgery, Defendant and his mother took care of Mr. Bernal at home. *See* ECF No. 22-1, Ex. D ("Ramirez de Bernal Decl.") ¶ 16. However, in 2009, less than a year and a half after he was diagnosed with glioblastoma, Mr. Bernal passed away. *See* ECF No. 22-2, Ex. G. Defendant's family had financial difficulties both before and after Mr. Bernal's death, and had to move on several occasions. Ramirez de Bernal Decl. ¶¶ 18, 27–28. Defendant was also deeply affected by his father's death. *See* ECF No. 22-2, Ex. F ("Defendant Decl.") ¶ 16; ECF No. 22-1, Ex. C.

Around the time of Mr. Bernal's illness and death, Defendant's mother, Ms. Ramirez de Bernal, also began to experience medical difficulties, including severe fainting episodes that required hospitalization. *See id.* ¶ 33; ECF No. 22-2, Ex. I. Defendant accompanied and sometimes drove his mother to her medical appointments, procedures, and emergency room visits, and also interpreted for her. *See* Ramirez de Bernal Decl. ¶¶ 34–36. Further, Ms. Ramirez de Bernal relied on Defendant for emotional support in the wake of Mr. Bernal's death. *See id.* ¶¶ 45, 51.

In February 2011, Defendant was arrested in Monterey County and charged with two counts of second degree robbery in violation of California Penal Code § 211, one count of assault with a deadly weapon in violation of California Penal Code § 245(a)(1), and one count of assault with force likely to cause great bodily injury in violation of California Penal Code § 245(a)(1). ECF No. 22-2, Ex. K, Complaint. At the time, Defendant was 18 years old. Defendant pled guilty to Count 1 (robbery under California Penal Code § 211) and Count 4 (assault with force likely to cause great bodily injury under California Penal Code § 245(a)(1)). ECF No. 22-2, Ex. K,

2
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

Abstract of Judgment. Defendant was initially sentenced to three years in prison, *id.*, but upon a motion to recall the sentence, Defendant's prison sentence was reduced to two years. ECF No. 22-2, Ex. K, Amended Abstract of Judgment.

After Defendant completed his sentence, he was taken into immigration custody and served with a Notice to Appear on December 14, 2012. ECF No. 22-3, Ex. Q, Notice to Appear. The Notice to Appear alleged that Defendant was removable because his second degree robbery conviction under California Penal Code § 211 was an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and a single crime involving moral turpitude within ten years of admission into the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(i). *Id.* Then, on January 31, 2013, the Notice to Appear was amended to add Defendant's conviction for assault with force likely to cause great bodily injury under California Penal Code § 245(a)(1). *See* ECF No. 22-3, Ex. Q, Additional Charges of Inadmissibility/Deportability. The amended charging document alleged that Defendant was removable because both his robbery conviction under California Penal Code § 211 and his assault conviction under California Penal Code § 245(a)(1) were aggravated felonies pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and because both of those convictions were crimes involving moral turpitude pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), which governs the deportability of aliens who have been convicted of two or more crimes involving moral turpitude. *See id.*

Defendant's mother hired an attorney to represent Defendant at his deportation proceedings. Ramirez de Bernal Decl. ¶ 46. In turn, Defendant's attorney filed a motion to terminate the deportation proceedings on grounds that Defendant's convictions did not qualify as removable offenses. ECF No. 22-4, Ex. R. At Defendant's removal hearing on March 6, 2013, an Immigration Judge ("IJ") found that Defendant was removable on all grounds charged. *See* ECF No. 22-4, Ex. S at 3–4. Specifically, the IJ determined that convictions under California Penal Codes §§ 211 and 245(a)(1) are categorically aggravated felonies and crimes involving moral turpitude. *See id.* The IJ further determined that Defendant was not eligible for discretionary relief pursuant to 8 U.S.C. § 1182(h). *See id.* at 5. Defendant's attorney also did not believe that

1  Defendant was eligible for relief under § 1182(h).  ECF No. 22-4, Ex. T.  However, Defendant
2  also stated at his March 6, 2013 hearing that he was afraid to return to Mexico because he feared
3  religious persecution.  ECF No. 22-4, Ex. S at 6.  Thus, the IJ continued Defendant's hearing to
4  April 15, 2013 to allow Defendant to file an application for protection against torture and
5  persecution.  *Id.* at 7.

Subsequently, at the April 15, 2013 hearing, Defendant stated that he was no longer afraid
to return to Mexico.  *Id.* at 13.  Further, based on the IJ's previous findings and his attorney's
advice, Defendant waived his right to appeal.  *See id.* at 15; Defendant Decl. ¶ 40.  Then, the IJ
signed a removal order, *see* ECF No. 22-3, Ex. Q, Removal Order, and Defendant was removed to
Mexico.

On or about July 12, 2016, Defendant was found in Monterey County, California, after
having reentered the United States without permission.  ECF No. 6 at 2.  Defendant was convicted
of a state crime, and then indicted in the instant case for illegal reentry in violation of 8 U.S.C. §
1326 on March 16, 2017.  *Id.*

## II. LEGAL STANDARD

### A. Motion to Dismiss an Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to
dismiss an indictment on the ground that the indictment "fail[s] to state an offense."  In
considering a motion to dismiss an indictment, a court must accept the allegations in the
indictment as true and "analyz[e] whether a cognizable offense has been charged."  *United States
v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "In ruling on a pre-trial motion to dismiss an
indictment for failure to state an offense, the district court is bound by the four corners of the
indictment."  *Id.*  A motion to dismiss an indictment can be determined before trial "if it involves
questions of law rather than fact."  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448,
1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government

4
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya–Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis of an indictment for illegal reentry, a defendant "must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya–Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III. DISCUSSION

Defendant argues that his 2013 deportation cannot serve as the predicate for an illegal reentry indictment for two reasons. First, Defendant asserts that his 2013 deportation was based on the IJ's erroneous determinations that Defendant's convictions under California Penal Code §§ 245(a)(1) and 211 were aggravated felonies and that Defendant's conviction under § 245 was a crime involving moral turpitude. Second, Defendant argues that even if he was deportable in 2013 based on his criminal history, the IJ violated Defendant's due process rights by erroneously advising Defendant that he was ineligible for discretionary relief under 8 U.S.C. § 1182(h), and Defendant's attorney "provided ineffective assistance in failing to pursue that relief." Mot. at 10. Defendant asserts that he was prejudiced by these errors "because he had plausible grounds to receive" relief under § 1182(h). *Id.* The Court considers each argument in turn

### A. Whether the IJ Correctly Determined that Defendant Was Deportable in 2013

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony

5
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

at any time after admission is deportable." Further, under § 1227(a)(2)(A)(ii), "[a]ny alien who . . . . is convicted of two or more crimes involving moral turpitude . . . is deportable." Defendant argues that when he was deported in 2013, none of Defendant's prior convictions rendered him deportable. As discussed above, at that point in time, Defendant had been convicted of one count of robbery in violation of California Penal Code § 211, and one count of assault with force likely to cause bodily injury in violation of California Penal Code § 245(a)(1). The IJ determined that both of Defendant's convictions constituted aggravated felonies, and that both convictions also amounted to crimes involving moral turpitude. In the instant motion, Defendant asserts that the IJ's determinations were erroneous. Specifically, Defendant argues that neither robbery under § 211 nor assault under § 245(a)(1) is an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii), and that assault under § 245(a)(1) does not amount to a crime involving moral turpitude for purposes of 8 U.S.C. § 1227(a)(2)(A)(ii). Mot. at 10–16.

The Government maintains that both of Defendant's robbery and assault convictions under §§ 211 and 245(a)(1) are aggravated felonies pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) *and* crimes involving moral turpitude pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). As discussed below, the Court agrees that Defendant was deportable in 2013 because his assault conviction under California Penal Code § 245(a)(1) qualifies as an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii). Thus, the Court need not consider Defendant's additional arguments that (1) his assault conviction was not a crime involving moral turpitude; and (2) his robbery conviction was not an aggravated felony.

The term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43) to mean, as relevant here, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). A "crime of violence" is in turn defined in 18 U.S.C. § 16 as, in relevant part, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).

In *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009), the Ninth Circuit held that

6

Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

"assault with a deadly weapon or by means of force likely to produce great bodily injury under [California Penal Code §] 245(a)(1) is categorically a crime of violence under the element prong of [United States Sentencing Guidelines ("U.S.S.G.")] § 2L1.2." *Id.* at 1197. The element prong of U.S.S.G. § 2L1.2 defines a "crime of violence" as any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Thus, the Ninth Circuit has stated that "the relevant definitions [of 'crime of violence'] under [18 U.S.C.] § 16(a) and U.S.S.G. § 2L1.2 are identical." *United States v. Narvaez-Gomez*, 489 F.3d 970, 976 (9th Cir. 2007). As such, Ninth Circuit decisions regarding the "crime of violence" definition in U.S.S.G. § 2L1.2 are applicable to cases involving 18 U.S.C. § 16(a). *See id.* at 976 (noting that *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006), addressed 18 U.S.C. § 16(a), but concluding that "the holding in *Fernandez-Ruiz* applies to the relevant 'crime of violence' definition under § 2L1.2 of the sentencing guidelines"). As a result, pursuant to *Grajeda*, assault with "force likely to produce great bodily injury under section 245(a)(1) is categorically a crime of violence" under 18 U.S.C. § 16(a), 581 F.3d at 1197, and is therefore categorically an "aggravated felony" for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii).

Defendant argues that the Ninth Circuit's decision in *Grajeda* "erroneously concluded that section 245 contained a sufficiently intentional *mens rea* to qualify as a crime of violence," and that *Grajeda* has "been abrogated by intervening authority," specifically *Elonis v. United States*, 135 S. Ct. 2001 (2015), and *Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (*en banc*). Mot. at 11. The crux of Defendant's argument is that "[t]he *mens rea* for California Penal Code § 245, as defined by the California Supreme Court in *People v. Williams*, 26 Cal. 4th 779 (2001), is a negligence standard," Mot. at 12, and that "[a] *mens rea* of negligence cannot satisfy" the "crime of violence" definition in 18 U.S.C. § 16(a). Mot. at 11.

However, the Ninth Circuit wrestled with this exact *mens rea* issue in *Grajeda*. Specifically, after noting that "[t]he *mens rea* required for assault under California law has been the subject of a long, tortured, and ongoing set of explanations in the California courts," the Ninth Circuit conducted a thorough reading of the California Supreme Court's decisions in *People v.*

7
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

*Colantuono*, 7 Cal. 4th 206 (1994), and *Williams*—the latter of which Defendant cites for the proposition that the "*mens rea* for California Penal Code § 245 . . . is a negligence standard." *Grajeda*, 581 F.3d at 1192; Mot. at 12. First, the Ninth Circuit observed that in *Colantuono*, the California Supreme Court "attempted to explain the *mens rea* for assault as follows: 'The intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary. The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm.'" *Grajeda*, 581 F.3d at 1193 (quoting *Colantuono*, 7 Cal. 4th at 218). The Ninth Circuit then noted that, "[e]mphasizing that the unlawful consequences of an assault need not be specifically intended, the *Colantuono* court concluded that 'the necessary mental state is *an intent* merely to *do a violent act*.'" *Id.* at 1194 (internal quotation marks omitted and emphases added). Second, the Ninth Circuit explained that in *Williams*, the California Supreme Court "reaffirmed" that "'mere recklessness of criminal negligence is still not enough'" to sustain an assault conviction under California law, and "emphasized that it was *not* adopting a 'negligence standard.'" *Id.* (quoting *Williams*, 26 Cal. 4th at 787–88); *see also Williams*, 26 Cal. 4th at 788 (stating that "we do not disturb our previous holdings" and citing *Colantuono*).

The Ninth Circuit then stated that, while "some of the *Williams* language supports" the position that "California's definition of assault requires merely criminally negligent conduct," other language from both *Williams* and *Colantuono* clarifies that "the use of force must be intentional, and only the specific injury need not be intended." *Grajeda*, 581 F.3d at 1195. In other words, in order to be convicted of assault in California, a defendant must have intended to use force, but need only have been negligent *as to the harm resulting from* his intentional use of force. Based in part on this reasoning, the Ninth Circuit concluded that "assault under California Penal Code section 245(a) requires proof of sufficiently intentional conduct to satisfy the *mens rea* requirement for a crime of violence" under "the element prong of [U.S.S.G.] § 2L1.2." *Id.* at 1197. The Ninth Circuit's conclusion is binding on this Court. As a result, Defendant cannot prevail on his argument that § 245(a)(1) does not require sufficiently intentional conduct to satisfy

8

Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

the *mens rea* requirement of 18 U.S.C. § 16(a). *See* Mot. at 11–12.

The Ninth Circuit's reasoning in *Grajeda* also demonstrates why Defendant cannot succeed on his argument that *Grajeda* has been "abrogated" by *Elonis v. United States*, 135 S. Ct. 2001 (2015). Mot. at 11. Defendant points to the United States Supreme Court's statement in *Elonis* that "[h]aving liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—reduces culpability on the all-important element of the crime to negligence." 135 S. Ct. at 2011 (citation and quotation marks omitted). Mot. at 12. Defendant then compares that statement to the California Supreme Court's holding in *Williams* that a defendant can be convicted of assault under California Penal Code § 245 "if a reasonable person, viewing the facts known to defendant, would find that the [defendant's] act would directly, naturally and probably result in a battery." *Id.* (quoting *Williams*, 26 Ca. 4th at 788 n.3). Based on this, Defendant argues that the incorporation of a "reasonable person" standard into § 245 means that § 245 requires only a *mens rea* of negligence, which in turn signifies that § 245 cannot qualify as a crime of violence under 18 U.S.C. § 16(a). *See* Mot. at 11. However, as the Ninth Circuit explained in *Grajeda*, in order to be convicted of assault under § 245, "the use of force must be intentional, and only the specific injury need not be intended." 581 F.3d at 1195. Thus, although Defendant is correct that under *Williams* and *Elonis*, § 245 appears to require a *mens rea* of negligence, that negligence *mens rea* applies only to the specific injury resulting from a defendant's conduct. *Williams* did not change the fact that, under California law, "an intent [] to do a violent act" is a "necessary mental state" for assault. *Colantuono*, 7 Cal. 4th at 219 (internal quotation marks omitted). Because the Ninth Circuit has recognized that the "intent [] to do a violent act" is sufficient to satisfy the *mens rea* requirement of U.S.S.G. § 2L1.2, *see Grajeda*, 581 F.3d at 1197, such intent also satisfies the *mens rea* requirement of 18 U.S.C. § 16(a).

Finally, Defendant's argument that *Ceron* abrogated *Grajeda* has already been considered and rejected by the Ninth Circuit. Specifically, in *United States v. Jimenez-Arzate*, 781 F.3d 1062 (9th Cir. 2015), the Ninth Circuit explicitly stated that *Ceron* "does not abrogate *Grajeda*'s holding that a conviction under § 245(a)(1) is categorically a crime of violence," in part because

9

Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

"*Ceron* does not clearly indicate a different interpretation of the *mens rea* requirement for § 245(a)(1) than that set forth in *Grajeda*." *Id.* at 1065.

Because Defendant's prior conviction under § 245(a)(1) is categorically an "aggravated felony" for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii), the IJ did not err in determining that Defendant was deportable in 2013. Thus, Defendant has failed to demonstrate that his 2013 deportation was "fundamentally unfair." 8 U.S.C. § 1326(d)(3); *see United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015) ("Where a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony, has established both that his due process rights were violated and that he suffered prejudice as a result."). Accordingly, Defendant's first collateral attack on his 2013 deportation fails as a matter of law.

### B. Whether the IJ's Determination that Defendant Was Ineligible for Discretionary Relief Under 8 U.S.C. § 1182(h), or Defendant's Attorney's Failure to Pursue Such Relief, Prejudiced Defendant

As discussed above, in order to successfully collaterally attack the validity of a deportation order underlying a charge of illegal reentry, a defendant must satisfy the three prongs of 8 U.S.C. § 1326(d). *See Raya–Vaca*, 771 F.3d at 1201. To satisfy the third prong, a defendant must demonstrate "both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted). The Ninth Circuit has "long held that, when an IJ erroneously informs an alien that he or she is ineligible for discretionary relief, the first two prongs of § 1326(d) are satisfied and that, under § 1326(d)(3), the alien's due process rights were violated; the remaining question is whether the alien has demonstrated the prejudice required under § 1326(d)(3)." *United States v. Ochoa*, 861 F.3d 1010, 1020 (9th Cir. 2017) (Graber, J., concurring).

Further, an ineffective assistance of counsel ("IAC") claim can also "serve[] as the basis for a collateral attack on an underlying deportation order under § 1326(d)." *United States v. Garcia-Morales*, 150 F. Supp. 3d 1201, 1212 (S.D. Cal. 2015); *see also United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1132 & n.9 (9th Cir. 2013) (citing with approval *United States v.*

10
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

*Perez*, 330 F.3d 97, 101 (2d Cir. 2003) ("Deprivation of the opportunity for judicial review [under § 1326(d)(2)] can be established by demonstrating ineffective assistance of counsel, and the failure of counsel to file a § 212(c) application can constitute ineffective assistance of counsel."). To prevail on an IAC claim, an alien must demonstrate that (1) his counsel failed to perform with sufficient competence; and (2) he was prejudiced by counsel's performance. *Garcia-Morales*, 724 F.3d at 1208.

Defendant argues that his 2013 deportation was invalid because the IJ erroneously informed Defendant that he was ineligible for discretionary relief under 8 U.S.C. § 1182(h) (a "§ 212(h) waiver"), and, alternatively, because Defendant's counsel rendered ineffective assistance by failing to pursue a § 212(h) waiver "at any stage of the proceedings," even though Defendant was "eligible for that relief." Mot. at 17–21. The Government asserts that at the time of Defendant's deportation proceedings in 2013, Defendant was not eligible for a § 212(h) waiver. Opp. at 14–17. Thus, the Government argues that the IJ did not err in informing Defendant that Defendant was ineligible for a § 212(h) waiver, and that Defendant's counsel was not ineffective for failing to pursue that relief. *Id.* at 17. Further, the Government asserts that even if the IJ erred by informing Defendant that he was ineligible for § 212(h) waiver, and even if Defendant's counsel was ineffective for failing to pursue that relief, Defendant's motion should still be denied because Defendant has not established that he was prejudiced by these errors. *Id.* at 17–20. For the reasons discussed below, the Court agrees with the Government that, even assuming Defendant was eligible for a § 212(h) during his 2013 deportation proceedings, the instant collateral challenge to the validity of Defendant's 2013 deportation fails because Defendant has not demonstrated prejudice.

An alien is prejudiced by an IJ's erroneous determination that the alien was ineligible for some form of discretionary relief only if it was "plausible" that an immigration official would have granted such relief. *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015). "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'" *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011); *see Valdez-Novoa*, 780 F.3d at 914

11
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

("We expressly reject the contention that relief is 'plausible' whenever an IJ could have granted the relief at issue without abusing his discretion."). Likewise, an alien cannot demonstrate that he was prejudiced by his counsel's ineffectiveness in "fail[ing] to file a necessary" application for relief if the alien "lacks 'plausible grounds for relief.'" *Hernandez-Mendoza*, 537 F.3d at 979 (quoting *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 826 (9th Cir. 2003)).

Thus, in the instant case, in order to show prejudice, Defendant must demonstrate that he plausibly could have received a § 212(h) waiver at the time of his deportation proceedings in 2013. The Ninth Circuit has established a "two-step process" for assessing whether an alien "has shown that he would plausibly have been granted a discretionary form of relief from removal." *Raya-Vaca*, 771 F.3d at 1206. First, courts must "identify the factors relevant to the [agency's] exercise of discretion for the relief being sought." *Id.* (internal quotation marks omitted). Second, courts must "determine whether, in light of the factors relevant to the form of relief being sought" and the "unique circumstances" of the alien's "own case," it was "plausible that the agency official considering the defendant's case would have granted relief from removal." *Id.*

Defendant argues that at the time of his 2013 deportation proceedings, Defendant could have plausibly been granted a § 212(h) waiver pursuant to 8 U.S.C. § 1182(h)(1)(B). *See* Mot. at 17. Under § 1182(h)(1)(B), the Attorney General "may, in his discretion, waive" certain grounds for criminal inadmissibility of an alien if the alien has a spouse, child, or parent who is a United States citizen or legal permanent resident ("LPR"), and that relative would suffer "extreme hardship" as a result of "the alien's denial of admission." The definition of "extreme hardship" is not "fixed and inflexible, and the elements to establish extreme hardship are dependent upon the facts and circumstances of each case." *Matter of Cervates-Gonzalez*, 22 I&N Dec. 560, 565 (BIA 1999). However, in order to demonstrate "extreme hardship" to an alien's citizen or LPR family member, the alien must show "great actual or prospective injury" to that family member "beyond the 'common results of deportation.'" *United States v. Arce-Hernandez*, 163 F.3d 559, 564 (9th Cir. 1998) (quoting *Shooshtary v. INS*, 39 F.3d 1049, 1051 (9th Cir. 1994)). The "common results" of deportation include "separation" of family members and "financial difficulties," but

12

those results "in themselves are insufficient to" establish extreme hardship. *Matter of Ngai*, 19 I&N Dec. 245, 246 (BIA 1984); *see United States v. Villavicencio*, 2011 WL 4345161, *10 (N.D. Cal. Sep. 14, 2011) (finding that the "financial and emotional hardship[s] resulting from" a father's deportation and consequent separation from his spouse and teenage children "are essentially those that typically result from a deportation"). Factors considered in determining extreme hardship include, but are not limited to, financial consequences, family ties in the United States, advanced age, and significant medical conditions. *See Matter of Cervantes-Gonzalez*, 22 I&N Dec. 560, 565–66 (BIA 1999). Importantly, the "extreme hardship" requirement is merely a threshold requirement for relief under § 1182(h)(1)(B); once extreme hardship is established, "it is but one favorable discretionary factor to be considered" by immigration officials in determining whether to grant a § 212(h) waiver to an alien. *Matter of Mendez-Moralez*, 21 I&N Dec. 296, 301 (BIA 1996).

Further, an alien who has been convicted of a "violent or dangerous" crime must satisfy an even higher standard. Specifically, such an alien must demonstrate "extraordinary circumstances, such as . . . cases in which an alien clearly demonstrates that the denial of the application for adjustment of status or immigrant visa or admission as an immigrant would result in exceptional and extremely unusual hardship." 8 C.F.R. §§ 212.7(d) & 1212.7(d). This "exceptional and extremely unusual hardship" standard is "a more restrictive standard" than "extreme hardship," and is "substantially beyond the ordinary hardship that would be expected when a close family member leaves the country." *Matter of Monreal-Aguinaga*, 23 I&N Dec. 56, 62 (BIA 2001). Thus, although "many of the factors that should be considered in assessing 'exceptional and extremely unusual hardship' are essentially the same as those that have been considered . . . in assessing 'extreme hardship,'" those factors "must be weighed according to the higher standard" of "exceptional and extremely unusual hardship." *Id.* at 63.

In the instant case, at the time of Defendant's 2013 deportation proceedings, Defendant had been convicted of assault with force likely to cause great bodily injury under California Penal Code § 245(a)(1), which constitutes a "violent or dangerous" crime under 8 C.F.R. §§ 212.7(d)

13

Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

and 1212.7(d). *See Ayala v. Holder*, 540 F. App'x 688 (9th Cir. 2013) ("The agency did not use an incorrect legal standard or violate due process in concluding that Ayala's conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) constituted a 'violent or dangerous crime' under 8 C.F.R. § 1212.7(d), which required him to meet the heightened hardship standard for a waiver of inadmissibility under 8 U.S.C. § 1182(h)."). Thus, in order for Defendant to establish that he was prejudiced by either the IJ's determination that he was ineligible for a § 212(h) waiver or his attorney's failure to pursue such relief, Defendant must demonstrate that, during his 2013 deportation proceedings, Defendant plausibly could have met both the "extreme hardship" and the "exceptional and extremely unusual hardship" standards.

Defendant argues that he plausibly could have satisfied both of these standards based on the hardship that his mother, Silvia Ramirez de Bernal, would have experienced as a result of his deportation. *See* Mot. at 23. Specifically, Defendant asserts that during his 2013 deportation proceedings, Defendant "could clearly have provided plausible grounds showing extreme hardship to his mother, an LPR" because "he assisted his mother on an ongoing basis with her medical conditions and other significant needs" and "also provided her with financial support." *Id.* To support his argument, Defendant submits, among other things, a declaration from Ms. Ramirez de Bernal, some of her medical records, and a declaration from Zachary Nightingale, an "expert immigration attorney."[1] *See* Ramirez de Bernal Decl.; ECF No. 22-2, Ex. I; ECF No. 22-4, Ex. U ("Nightingale Decl."). In his declaration, Mr. Nightingale concludes that Defendant could plausibly have satisfied both hardship standards because Defendant provided his mother crucial support "through her medical issues," and "also provided his mother with emotional and financial support when the family was suffering from the loss of Mr. Bernal, the family's main income provider." Nightingale Decl. ¶¶ 38–39.

---

[1] The Government argues that the Court should disregard Mr. Nightingale's declaration because it is "improper" and should be either "excluded or subject to cross-examination." Opp. at 20–23. Defendant disagrees and asserts that Mr. Nightingale's expert opinion "is properly before the Court." Reply at 12. The Court need not resolve this dispute because, even considering Mr. Nightingale's declaration, the Court finds that Defendant could not have plausibly satisfied both the "extreme hardship" and the "exceptional and extremely unusual hardship" standards.

14
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

Based on Defendant's submissions, the Court acknowledges that in all likelihood, Defendant could have shown that Ms. Ramirez de Bernal would suffer hardship as a result of Defendant's deportation. However, the Court finds that Defendant could not have plausibly shown that his mother's hardship would be severe enough to satisfy either the "extreme hardship" standard or the even higher "exceptional and extremely unusual hardship" standard. Defendant was the youngest of Ms. Ramirez de Bernal's four children. Thus, even though Defendant may have had more availability than his three older siblings to assist his mother "[b]ecause he was the youngest" and therefore "always there" with his mother, Ramirez de Bernal Decl. ¶ 43, Ms. Ramirez de Bernal's other children also provided her with crucial economic and non-economic support after her husband's death in 2009, when Defendant was sixteen years old.

First, with regards to financial support, although both Defendant and Mr. Nightingale state that Defendant provided his mother with financial assistance before he was deported in 2013, Ms. Ramirez de Bernal's declaration does not mention that she received any financial support from Defendant except for $100 to $200 per week for "a few months" in 2010. Ramirez de Bernal Decl. ¶ 39. Indeed, Ms. Ramirez de Bernal's declaration indicates that the bulk of the financial support she received after her husband's death came from Angel, who was one of her other sons. In paragraph 27 of her declaration, Ms. Ramirez de Bernal states: "My son Angel was working and contributing, but I did not have any other source of income right after my husband's death." Moreover, Defendant's sister supported both Ms. Ramirez de Bernal and Defendant by allowing them to move in with her on at least two separate occasions. In paragraph 29 of her declaration, Ms. Ramirez de Bernal states: "Because we could not pay all of our bills, at one point we moved in again with my daughter and her family."

Second, although Ms. Ramirez de Bernal appears to have suffered from some significant medical conditions shortly after her husband passed away, *see* ECF No. 22-1, Ex. E, and although she states that Defendant helped her with her medical needs by driving or accompanying her to appointments and interpreting for her, *see* Ramirez de Bernal Decl. ¶ 34, Ms. Ramirez de Bernal's declaration reveals that she was far from "solely dependent upon" Defendant for assistance with

15

her medical needs. *Monreal-Aguinaga*, 23 I&N Dec. at 63. As an initial matter, Ms. Ramirez de Bernal states that she "wasn't always sure if [she] would need [Defendant] to interpret" for her. Ramirez de Bernal Decl. ¶ 36. Further, Ms. Ramirez de Bernal also states that one of her other sons, Heraclio, would sometimes accompany her to medical appointments as well. *Id.* ¶ 34. Additionally, as discussed above, Ms. Ramirez de Bernal had two other children who also supported her.

Third, and finally, although Ms. Ramirez de Bernal states that she relied on Defendant for emotional support in the wake of her husband's death, *see* Ramirez de Bernal Decl. ¶¶ 43, 51, the Ninth Circuit has found under similar factual circumstances that such emotional reliance is insufficient to satisfy the "extreme hardship" standard. Specifically, although the defendant in *United States v. Garcia-Frausto*, 40 F. App'x 570 (9th Cir. 2002), submitted evidence that he was "the closest to his parents of his six siblings" and that his parents were emotionally "devastated" by his prior deportation, the Ninth Circuit "[could not] say that the hardships [that the defendant's] parents will suffer because of [the defendant's] deportation 'would be extreme and beyond the common results of the deportation'" because "[t]he record shows that [the defendant] has six brothers and sisters who [were] available to provide his parents comfort and emotional support." *Id.* at 575.

Similarly, in the instant case, although Ms. Ramirez de Bernal states that immigration officials "took away [her] happiness" when Defendant was deported, Ramirez de Bernal Decl. ¶ 51, Ms. Ramirez de Bernal had three other children "who [were] available to provide . . . comfort and emotional support." *Garcia-Frausto*, 40 F. App'x at 575. Ms. Ramirez de Bernal also states that "[a]fter [Defendant's] deportation, [her] depression kicked in again." Ramirez de Bernal Decl. ¶ 51. However, the only medical records that Defendant submits are from 2010 after her husband died in 2009. *See* ECF No. 22-2, Ex. I. None of those records document whether Ms. Ramirez de Bernal suffered from depression after Defendant was deported in 2013. Thus, Defendant lacks "thorough factual documentation that demonstrates extreme hardship." *See Garcia-Frausto*, 40 F. App'x at 575 (finding that a mother's declaration that her son's deportation

16

Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT

made her depressed and "physically ill," coupled with the father's declaration that he was "devastated," were insufficient to establish "extreme hardship" to the parents because their declarations "merely offered conclusions concerning the non-economic impact of [the son's] absence from [them] rather than a thorough factual documentation that demonstrates extreme hardship").

As a result, the Court concludes that at the time of his deportation proceedings in 2013, Defendant could not have plausibly demonstrated that his mother would suffer consequences that were "beyond the 'common results of deportation.'" *Arce-Hernandez*, 163 F.3d at 564 (quoting *Shooshtary*, 39 F.3d at 1051; *see Matter of Ngai*, 19 I&N at 246 (stating that "common results" of deportation such as "separation" of family members and "financial difficulties" are "in themselves insufficient to" establish extreme hardship); *Villavicencio*, 2011 WL 4345161 at *10 (finding that a father's separation from his spouse and teenage children are hardships "that typically result from a deportation"). Thus, Defendant could not have plausibly satisfied the "extreme hardship" standard, let alone the heightened "exceptional and extremely unusual hardship" standard. Defendant therefore cannot demonstrate that he was prejudiced by either the IJ's determination that Defendant was ineligible for a § 212(h) waiver or his attorney's failure to pursue such relief. Accordingly, Defendant's second collateral challenge to the validity of his 2013 deportation is unavailing.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss the indictment for illegal reentry under 8 U.S.C. § 1326.

**IT IS SO ORDERED.**

Dated: January 16, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

17
Case No. 17-CR-00130-LHK-1
ORDER DENYING MOTION TO DISMISS INDICTMENT